POLK COUNTY v. STEVENS.

(Court of Civil Appeals of Texas. Amarillo. Nov. 25, 1911. Rehearing Denied Dec. 28, 1911.)[1]

1. BOUNDARIES (§ 8*)—CALLS—LINES OF ADJOINERS.

The lines of a grant must be established by the calls in its field notes where there is no conflict or inconsistency in them, and such calls speak for themselves, and cannot be aided by the lines and calls of other surveys not mentioned in the field notes.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 66–76; Dec. Dig. § 8.*]

2. BOUNDARIES (§ 33*)—METES AND BOUNDS—MONUMENTS—PRESUMPTIONS.

Where the field notes of a county school land survey are complete within themselves, and contain no inconsistent calls, and can be identified by course and distance from its beginning corner, the presumption is that bearing trees called for have been removed after the lapse of fifty years or more, and that a call for an unmarked line not found was by mistake of the surveyor who supposed that the line was or ought to be there.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 146–152; Dec. Dig. § 33.*]

3. BOUNDARIES (§ 7*)—CALLS FOR ADJOINERS—LOST CORNERS.

Where a line called for in the field notes of a county school land survey constituted the east line of another survey, an open unmarked line, and neither the northeast nor the southeast corners of the latter survey could be found

[1] This appeal was filed in the Court of Civil Appeals at Ft. Worth Dec. 7, 1910, and transferred to this court July 1, 1911, by order of the Supreme Court of Texas.

on the ground by any artificial object called for in its field notes, the northwest corner of the school land survey must be located at the terminus of course and distance from its northeast corner as established by course and distance from its southeast corner definitely located on the ground.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 58–65; Dec. Dig. § 7.*]

4. BOUNDARIES (§ 3*) — CONTROLLING ELEMENTS—SCHOOL LANDS.

Under Rev. St. 1895, art. 4269, providing that in surveys of school lands the calls for distance must prevail over calls for natural objects, where the calls for distance will give the land intended, otherwise not, the court, in ascertaining the boundaries of a county school land grant, will so construe the field notes as to give the county the benefit of those calls that are most favorable to its interests when they can be ascertained with a reasonable degree of certainty,· though by so doing some other call may be displaced which may, under ordinary rules of construction of determining the superiority of calls, be given effect and made to control when the lines of county school lands are not involved, and a boundary line which can be ascertained with a reasonable degree of certainty will control the call for distance if in accordance with the conditions prescribed in the statute, but in determining a lost line in a county school land grant the ordinary rule of construction, in recognition of the controlling influence of established corners, controls.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

5. BOUNDARIES (§ 3*) — CONTROLLING ELEMENTS—SCHOOL LANDS.

. Where the field notes of a county school land survey are complete in themselves, and contain no inconsistent calls and can be identified by course and distance from the beginning corner fixed on the ground, the calls control.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

Appeal from District Court, Baylor County; Jo. A. P. Dickson, Judge.

Action by Polk County against J. W. Stevens. From a judgment for defendant, plaintiff appeals. Affirmed.

See, also, 123 S. W. 618.

S. Webb and T. J. Wright, for appellant. J. T. Montgomery and D. A. Holman, for appellee.

PRESLER, J. This is a suit in trespass to try title by appellant seeking to recover title and possession to 340 acres of land, alleged to be a part of three leagues of land, situated in the counties of Baylor and Throckmorton, and in the state of Texas, and known and designated on the official maps of said county as "Polk County School Land Survey," having been granted to said Polk county by the state of Texas, by patent No. 45, vol. 15, on the 26th day of August, 1859; the 340 acres so alleged to be a part of the said Polk county school land survey being set out and described by metes and bounds in appellant's petition. Appellant also sues for damages in the sum of $1,000 for the wrongful conversion and withholding of said land, and for damages in the further sum of $952, for being deprived of the use,

benefit, and enjoyment of said premises, to which appellee (the defendant below) answered by demurrer and pleas of general denial and not guilty, and specially that he was and had been for many years the owner and in possession of the following lands, to wit, One tract of land patented to the defendant on June 6, 1885, described as follows: "Beginning at the northeast corner of the two leagues Upshur county school land, thence east to a stake in the south boundary line section 4, T. & N. O. R. R. Co. and N. W. corner of A. C. Thompson pre-emption; thence south on west line of A. C. Thompson pre-emption survey to north boundary line of the Polk county school land; thence west to the east boundary line of said Upshur county school land; thence north to the place of beginning; also section No. 4, T. & N. O. R. R. Co., which lies north of said A. C. Thompson pre-emption, patent No. 322, aforesaid; that he had been the owner in possession of the southeast quarter of said section No. 4, T. & N. O. R. R. Co. since 1880 and of the balance of said section since 1883; that all of said lands so owned by defendant lie north of and outside of the north boundary line of Polk county school land; that the north boundary line of said Polk county school land runs from its extreme northeast corner which is 14,838 varas north of its well-identified southeast corner on the colony (T. E. & L. Co.) north line 857 varas west of the northeast corner of survey 2131, T. E. & L. Co. (which said corner is well established and verified on the ground), and at 8,562 varas west of said established corner which N. E. corner is located; from which 50 varas west of Sand Ridge, a mesquite S. 52, E. 8 varas; do. 48 west 8 varas, red bluff N. 6½ E. 500 varas; and thence west 2,459 varas to its extreme northwest corner stone, mound, five mesquites in a bunch, two of them marked X, N. 86, W. 17¾ vrs; leaning mesquite N. 63½ vrs. east 20 vrs; 15 w. of wagon load or rocks scattered ten to fifteen feet around northwest corner; being 14,838 vrs. north of the colony (T. E. & L. Co.) as shown by the field notes in its patent and by actual measurements on the ground." That the south line and southeast corner of Polk county school land is the only line and corner identified on the ground, and other lines and corners having disappeared from the ground, and that course and distance is the only and the correct way left for establishing the boundaries of the Polk county school lands; that when so surveyed it excludes all the lands sued for in this case from the boundaries of the Polk county school lands, and the lands patented to this defendant June 6, 1885, calling for the north boundary of the Polk county school land, as the southern boundary of defendant's said lands; that this is simply a boundary suit, and that the rights of the parties is dependent upon the correct location of the extreme northern boundary of

the Polk county school land, which defendant avers is at the point heretofore alleged, and asks that the same be established, and that plaintiff take nothing by its suit, and for costs and general relief.

[1] We find, as disclosed by appellant's brief, that it is contended (1) that its right to recover would be established upon showing the location of the most northern west boundary and north boundary lines of its survey in any manner possible to do so, and regardless of where the evidence might show its southeast corner to be located, and that the land involved in this suit being county school land, was entitled to be located so as to give effect to every call in the field notes of the grant, and embrace all of the land intended to be covered by the original survey, and that, too, without regard to whether the original surveyor was mistaken in some one or more of its calls or whether course and distance would give out before reaching the point called or whether the point called for was reached before course and distance gave out, and, in support of this contention, claims that from the evidence adduced on the trial that the only difficulty encountered in tracing the footsteps of the original surveyor who located the survey arose from the fact that none of the corners of Polk county school land survey can be certainly located by positive identification of any of the natural or artificial objects called for in the field notes. All have perished with the flight of time, and that by the terms of the grant Polk county school land survey is bounded on the south by a number of colony surveys, the southeast corner calling to be on the colony line at a point 854 varas west of the northeast corner of survey No. 2,131 and on the west by the Good, Haygood, Farmer, and the Upshur county school land survey; that the southwest corner of the Upshur county survey and the northwest corner of the Travis county survey being identical corners that it is a well-identified and defined corner, having a round mound bearing, that neither time nor man could efface; that from this known corner, the southeast corner, and the east boundary line of Upshur county survey, and the northeast corner of the Farmer survey, and the northwest corner of the Polk county survey can be located and identified by running course and distance. As we understand from the record in this case, appellant's right to recover is dependent upon showing the location of the north boundary line of its survey to be so established as to include the 340 acres of land in controversy, by legal and competent evidence, and not, as claimed by appellant, in any manner appellant found it possible to do so, and regardless of where the evidence might show its southeast corner to be located. It would appear from the record and the evidence that the location of the southeast corner of the Polk county school land is the only corner of the grant that is

definitely fixed on the ground by the field notes of the grant, and that its location is determined by the calls contained in the grant to be at the point contended by appellee and described in the patent as at a point 854 varas west of the northeast corner of survey No. 2,131, and that there is substantially no controversy between the parties to this suit as to the true location of said southeast corner. And that to establish the northwest corner of the grant as contended for by appellant, would be in violation of the fundamental rule that the lines of a grant must be established by the calls contained in its field notes, if there be no conflict or inconsistency in them, and that such calls must speak for themselves, and that such calls cannot be aided by the lines and calls of other surveys not mentioned in the field note of the grant. In the case of Thompson v. Langdon, 87 Tex. 258, 28 S. W. 935, the Supreme Court of this state, in an opinion rendered by Judge Gaines, says: "The lines of a grant must be established by the calls in its field notes. If these calls are inconsistent, then certain rules of construction and mere parol evidence may be resorted to in order to solve the doubt, and to establish the line which was actually run by the surveyor. It is but a case of latent ambiguity in a written instrument. A writing not ambiguous upon its face may become doubtful when applied to the subject-matter of the description. On the other hand, if there be no conflict in the calls found in the field notes of the survey, there is no room for construction, and the calls must speak for themselves. * * * The field notes of survey No. 105 call to begin at the southwest corner of No. 104, and show that it was the intention of the surveyor to leave no vacant land between the two surveys. They suggest that the surveyor made a mistake in his call for the length of the east line of No. 104 or of the corresponding line of No. 105, or in both of these lines, but we apprehend that it is not proper to resort to the call in the field notes of another survey, although made at the same time and by the same surveyor, to create a conflict in case none arises from the calls of the survey in question when applied to the objects called for as actually found on the ground. Survey No. 104 can be established by course and distance from its beginning corner without disregarding any calls contained in it, and in our opinion it should be so established."

In Upshur County v. Lewright, 101 S. W. 1013, the court says: "Where the field notes of a survey are complete in themselves and contain no inconsistent clause, and can be identified by course and distance from the beginning corner, it is not permissible to look to the field notes of another survey in order to create inconsistency in the calls of the survey which are complete within themselves."

[2] It appears from the evidence that the field notes of Polk county school land survey are complete within themselves and contain no inconsistent calls, and can be identified by course and distance from its beginning corner. Its call from northeast corner 2,458 varas to a corner with its bearing trees shows that the surveyor actually stopped with the course and distance which would take precedence over an unmarked line, the presumption of law being that bearing trees, after the lapse of more than 50 years, have perished or been removed and that the call for an unmarked line not found at that point, and not accurately found on the ground elsewhere, was by mistake on the part of the surveyor who supposed that the line was or ought to be there. Oliver v. Mahoney, 61 Tex. 612; Moore v. Reiley, 68 Tex. 670, 5 S. W. 618; McAninch v. Freeman, 69 Tex. 447, 4 S. W. 369. [3] It is evident from the evidence that the line called for, to wit, the east line of the Upshur county survey, was an open unmarked line, and that neither the southeast nor the northeast corner of the Upshur could be found on the ground by any artificial object called for in its field notes, whether located 10,000 varas north from the colony line, as called for, on east line of Travis from a point 5,632 varas, west of the southeast corner of I. J. Good, as called for in its patent, and 1,283 varas south of southwest corner of Haygood, as called for in Travis east line, or from a point 10,000 varas east from southwest corner of Upshur. At this latter point all of the surveyors testified that they found nothing to identify the southeast or northeast corner of Upshur as called for. A. D. Kerr testified that in surveying the Good, Haygood, Farmer, Upshur and Travis, in 1887, the only corner he could positively identify was northwest Travis and southwest Upshur, or the mountain corner. We think it is evident, therefore, that the east boundary line of Upshur county school survey from a point 10,000 varas east of its southwest corner, is an open unmarked line as is its east boundary line from its southeast corner to Calvin Farmer northwest corner. Therefore, under the ordinary rules for constructing surveys, Polk county's northwest corner should be located at the terminus of course and distance from its northeast corner; i. e., 2,458 varas, as ascertained by course and distance from its southeast corner. Mitchell v. Bass, 26 Tex. 372; Fagan v. Stoner, 67 Tex. 288, 3 S. W. 44.

[4] The call for Polk county northwest corner, as given in its field notes is: "Thence west 2,458 vrs. to a stake in the boundary line of a two-league survey for Upshur county, from which a mesquite bears north 84, east 18 vrs.; another bears south 85, east 40 vrs." And appellant apparently contends that the course and distance called for giving out without finding the bearing trees or the unmarked line of Upshur county at that point, then as Polk county was school land, that under article 4269, R. S. 1895, that line

must be prolonged to suit unmarked line wherever found, and apparently overlooked the fact that this unmarked open line must be ascertained with accuracy before it can be accorded the dignity of an artificial object that will prevail over course and distance. Maddox v. Fenner, 79 Tex. 279, 15 S. W. 237; Ware v. McQuinn, 7 Tex. Civ. App. 107, 26 S. W. 126. As stated hereinbefore, it is elementary that the line of a grant must be established by calls in its own field notes and that if there is no conflict in the calls found in the field notes of a survey, there is no reason for construction, and the calls must speak for themselves. It appears that inconsistency can be shown only in the call for Upshur's east boundary line and bearing trees at 2,459 vrs. west from the Polk county northeast corner by resorting to the field notes of other surveys, which is not permissible, for the purpose of showing that such line is west of the distance called for, and that only by subordinating course and distance to an unmarked line which could not itself be ascertained except by running the boundaries of another survey according to course and distance. Gerald v. Freeman, 68 Tex. 203, 4 S. W. 256. Again in Lewright v. Travis County, 54 Tex. Civ. App. 543, 118 S. W. 727, Judge Fisher, who has reversed and rendered the case of Coleman County v. Stewart, 65 S. W. 384, where the survey called for the lands between the lines of older surveys, but the surveyor by mistake called for distance 400 yards too short to reach the lines, says: "Our judgment of rendition in favor of the county was based upon the superiority of the calls of the river surveys and we determined the question as we would any ordinary case of boundaries where county school lands were not involved." The case was appealed to the Supreme Court, 95 Tex. 445, 67 S. W. 1016, and affirmed, the court saying: "Where the facts are fully understood, it is by no means clear that without the statute (article 4269) the judgment would be wrong," and concluded that it was justified by the provisions of the statute (article 4269, R. S.) and in construing that article gave the rule quoted from Stewart v. Coleman County, supra. In Lewright v. Travis County, 54 Tex. Civ. App. 546, 118 S. W. 728, Judge Fisher, rendering the opinion of the court says: "In its final analysis, this decision means in ascertaining the boundaries of county school lands such construction will be given to the field notes so returned to the Land Office as to give to the county the benefit of those calls that are most favorable to its interests, when they can be ascertained with a reasonable degree of certainty, although by so doing, some other call may be displaced, which might, under ordinary rules of construction of determining the superiority of calls be given effect and made to control when the lines of county school lands were not involved." And in applying the above announced rule to the construction of the Travis county school survey, the court resorted to that method which would close the survey, and which would be in recognition of the importance and controlling influence of the only two calls which cannot be questioned and the identity of which is clearly established. Giving in this case full force and effect to the rule prescribed in article 4269, and the decisions construing it, we find nowhere prescribed a rule for finding with reasonable certainty a lost unmarked line called for, but not found at the distance and course called for, or elsewhere. The only point in the whole of Polk county school survey where the rule as announced above could apply is as to whether its north boundary call will stop at 2,458 varas west of its northeast corner, as called for in the grant, or be extended to the Upshur east boundary line called for at that point, but not found. We concede that, if it can be ascertained with a reasonable degree of certainty, it should control the call for distance; that is, if in accordance with the conditions prescribed in the statute, to wit: (1) That the distance would give the quantity of land intended to be included in the survey, and that the call for natural objects will not; (2) that it shall not divest any vested right. The questions recurs, How are we to ascertain with reasonable certainty where this lost line is located? It can be done only by resorting to the ordinary rule of construction in "recognition of the importance and controlling influence of established corners, which cannot be questioned, and the identity of which is clearly established." Lewright v. Travis County, supra. If the Upshur east boundary line was an established line elsewhere by the original surveyor, there could be no difficulty in extending Polk county north line west to it, but it appears from the evidence that it is an open, unmarked line, and that neither its initial southeast corner, nor its terminal northeast corner, has been found with any degree of certainty. Considering the Upshur, Travis, Farmer, Haygood and Good as one system of surveys, with the northwest corner of Travis and southwest corner of Upshur established and identified, with their south line definitely tied to the north boundary of the colony, and the southeast corner of the Good by its patent and field notes definitely tied to and located at Polk county southwest corner on the colony line at a given distance from an established and identified corner on that colony line, the system must be constructed in recognition of the importance and controlling influence of those two corners which cannot be questioned and the identity of which is clearly established; so constructed, and beginning on this corner of the Good, as did the original surveyor, and following his footsteps by course and distance, it places the east boundary line of the Upshur at 2,458 varas from the northeast corner of

Polk county survey as called for; there is no inconsistency in the call and by course and distance given in the Polk county survey, it can be and is located with almost absolute certainty. Under such circumstances, we do not think it permissible to look to the field notes of another survey in order to create inconsistency in the calls of the Polk county survey. Upshur County v. Lewright, 101 S. W. 1013. It will be thus seen that the northwest corner of Polk county survey cannot be located as contended for by appellant by the calls of its own field notes, as there is no call in said field notes for the southwest corner of the Upshur county survey and the northwest corner of the Travis County survey (i. e. the corner having a round mound bearing), and from which corner appellant seeks to establish the southeast corner and the east boundary line of Upshur county survey, the northwest corner of Farmer survey and the northwest corner of Polk county survey, and that to thus establish the northwest corner of the Polk county survey would require lines to be run by calls contained in other and different surveys. Appellant states in his brief: "The evidence fairly establishes that the southeast corner of Polk county survey can be located in the same way—that is, by running course and distance from a fairly well-identified corner of the colony survey 2,131"—and thus seeks to recognize the northwest corner of Polk as contended for by appellant, and the southeast corner of said survey as of equal dignity as to definiteness and certainty of location on the ground, which we do not think is sustained by the evidence, inasmuch as it appears therefrom that the southeast corner of Polk county survey is definitely fixed on the ground by the call given in its own field notes, said field notes reciting as follows: "Beginning at a stake and mound southeast of a 1,280-acre survey for I. J. Good, thence east with the north line of Peters colony survey, Nos. 2,200, 2,199, 2,153, 2,132, 2,131 and 4,728 varas to a stake and mound in prairie, 854 vrs. west of the northeast corner of No. 2,131." And that by its own field notes, the south line of Polk county survey is definitely fixed and found on the north line of these colony surveys on particular sections named, and that said south line of the Polk county survey is well established on the ground, and that while the stake and mound called for (artificial objects) at the southeast corner of Polk county survey, have perished, yet the call for 864 vrs. west of northeast corner of 2,131 is a call contained in the grant itself (Polk county) and for a corner of an older line and survey about the location of which there does not appear to be any serious controversy, and that is thoroughly established on the ground. We think the southeast corner of the grant (Polk county) is thus a more certain location by positive identification and more controlling than its northwest corner could be if found, as contended for by appellant; that is, by running calls of another survey 10,000 varas east and 4,000 north, without monument or mark of the original surveyor from beginning to end to identify his footsteps. A call for a corner on a line at a given distance from a known corner on that line is a definite call, and should not be disregarded in constructing the survey. Randall v. Gill, 77 Tex. 351, 14 S. W. 134. It thus appears that appellant's first contention, as hereinbefore set out, would ignore the only corner conceded by both appellant and appellee, and the only one found on the ground by its own field notes, and the controlling one, from which in our opinion, the survey should be constructed.

[5] Appellant's second contention is that if it was necessary for all of the lines and corners of its surveys to be located that it should be done by constructing the survey from the two discoverable corners, namely, its southeast and northwest corners, in the manner best calculated to give effect to the manifest intention of the original surveyor, and preserve as near as might be the original configuration of the survey itself.

In Lewright v. Travis County, 54 Tex. Civ. App. 547, 118 S. W. 729, the court held that in Travis county field notes the northwest corner and the colony line on the south fix definite points of the survey which includes all of the land lying between them and fix the measure of the land the county is entitled to, and applied the method that would "close the survey and would be in recognition of the importance and controlling influence of the only two calls, which cannot well be questioned, and the identity of which is clearly established." In this case the south line and southeast corner of Polk county are the only "definite points" fixed by its own field notes. Its northwest corner is not "definitely fixed" nor can be found except by course and distance from its southeast corner by its own field notes. Its call for Upshur E. B. line at the exhaustion of course and distance from its southeast corner, creates no more inconsistency in the call, because that line is not found at that point, than its call for the bearing trees. It is no more proof that the line is not at that point, than it is that the bearing trees were not there, after the lapse of 50 years, when both have disappeared "under the lapse of time."

It cannot be shown that the line is not there from the field notes of Polk county schools survey. "They are complete in themselves and contain no inconsistent calls, and can be identified by course and distance from the beginning corner."

We therefore conclude that under the law and the evidence neither of appellant's contentions can be sustained and that as found by the jury, appellant has failed to establish its right to the land sued for as a

part of its grant, and, as we view the case, the verdict of the jury and the judgment of the court is not only authorized and sustained by the evidence, but no other verdict could have been given thereunder, and finding no reversible error under any or either of appellant's assignments, we conclude that the judgment appealed from should be in all things affirmed, and it is accordingly so ordered.